## CIRCUIT COURT OF THE CITY OF RICHMOND

St. Paul Guardian Ins. Co.

v.

Maurice E. Fox
and James A. Ross

March 19, 1992

Case No. LT-2536–4

BY JUDGE RANDALL G. JOHNSON

In this declaratory judgment action, the court is asked to decide whether an insured's failure to submit to a physical examination as required by an automobile insurance policy precludes the insured from recovery under the medical payments and uninsured motorist coverages of the policy. Plaintiff is St. Paul Guardian Insurance Co., which issued the policy in question to Waverly Mealy. Defendants are Maurice E. Fox and James A. Ross. For the reasons which follow, the court concludes that the policy provisions relied on by St. Paul to deny coverage are invalid and that the insured is entitled to recover under the policy.

On April 18, 1990, Maurice E. Fox was injured when the car he was driving, which was owned by Waverly Mealy and which Fox was driving with Mealy's permission, was involved in a collision with a motor vehicle being driven by James A. Ross. Ross was uninsured. Fox made a claim with St. Paul under the medical payments coverage of Mealy's policy and on June 18, 1990, filed a motion for judgment against Ross in this court, alleging that Ross's negligence caused the collision and Fox's injuries. At Fox's request, a copy of the motion for judgment was served on St. Paul pursuant to Va. Code § 38.2–2206.

On May 15, 1990, after Fox had filed his claim for medical payments but before his suit against Ross was filed, St. Paul wrote to Fox and his lawyer informing them that an appointment had been

made for Fox to be examined by Dr. Bernard Lublin, an orthopedist, on May 22, 1990. In its letter, St. Paul set forth the following language from the policy relating to claims for medical payments:

> The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require.[1]

Fox failed to keep the appointment. On June 21, 1990, St. Paul sent another letter to Fox and his lawyer, informing them that another appointment had been scheduled with Dr. Lublin and telling them that the condition quoted above "is under the automobile medical payments portion of the policy as well as the uninsured motorist portion of the policy. Therefore, failure to cooperate with the conditions of the automobile policy will jeopardize any claim Mr. Fox wishes to make under this policy." Fox again failed to keep the appointment. St. Paul now claims that Fox's failure to keep the appointments relieves it of the obligation to honor Fox's claims under the medical payments and uninsured motorist provisions of the policy. The court rejects St. Paul's position.

Virginia Code § 38.2–2206 deals with uninsured motorist provisions in automobile policies issued in the Commonwealth. Subsection H provides:

> H. No endorsement or provisions providing the coverage required by subsection A of this section shall require arbitration of any claim arising under the endorsement or provisions, *nor may anything be required of the insured except the establishment of legal liability*, nor shall the insured be restricted or prevented in any manner from employing legal counsel or institution legal proceedings.

(Emphasis added.)

Here, St. Paul attempts to required Mr. Fox to do something more than establish legal liability; to wit, to be examined by Dr. Lublin. While such an examination may be ordered by the court as part of Fox's attempt to establish legal liability,[2] St. Paul's unilateral and

---

[1] Condition 7 of the policy (page 5). The same language is found in Condition 9 of the policy, also on page 5, dealing with claims under the uninsured motorist coverage of the policy.

[2] See Rule 4:10 of the Rules of the Supreme Court of Virginia, providing for the physical and mental examinations of parties to lawsuits.

extra-judicial requirement of a physical examination is a direct and blatant violation of the statute just cited. Indeed, to allow an insurer to require such examinations when such insurer has been served, or is likely to be served, as an uninsured carrier would give the insurer an unfair and unwarranted advantage over the injured person in the litigation process. It is undoubtedly for that reason that the General Assembly has chosen to prohibit insurance companies from requiring of the insured anything other than "the establishment of legal liability."

In *Nationwide Mutual v. Sours*, 205 Va. 602, 139 S.E.2d 51 (1964), the insurer denied coverage under its uninsured motorist provisions because the insured failed to file with the insurance company "a statement under oath setting forth the facts of the accident as required by certain terms of the policy." 205 Va. at 607. In rejecting the insurer's position, the Court first found that the requirement did not apply to the specific accident involved in that case. The Court went on to say, however:

> But even if proviso (ii) were construed to apply to the present claim of the plaintiff, it would clearly be invalid for the reason that it imposes on the insured a condition beyond those incorporated in Code, § 38.1–381, which fixes the terms and obligations of a policy of this character.
>
> Moreover, the requirement for such statement, embodied in the policy, is in conflict with Section 38.1–381(g) which provides, with respect to the provisions of a policy, "nor may anything be required of the insured except the establishment of legal liability.[3]

The requirement that an insured submit to a physical examination is just as repugnant to the provisions of the statute as the requirement of a written statement. As the Supreme Court held in *Maxey v. John Doe and GEICO*, 217 Va. 22, 225 S.E.2d 359 (1976), "after the uninsured motorist claim [is] asserted, insurer and insured assume[] an adversary relationship . . . ." 217 Va. at 25. To uphold the requirement that St. Paul seeks to enforce here, or that Nationwide sought to enforce in *Sours, supra,* would give one of those adversaries an advantage which neither the General Assembly, through its laws, nor

---

[3] Section 38.1–381 was the predecessor of present Section 38.2–2206, and subsection (g) of the previous version is now subsection H.

the Supreme Court, through its rules, has allowed. Nor does the fact that St. Paul's first request for an examination occurred prior to the filing of suit make any difference. It is the *claim* under the uninsured motorist provision which, according to *Maxey*, triggers the adversary relationship—not the filing of a lawsuit. In any event, Section 38.2–2206(H) does not depend upon the filing of suit. Indeed, one of the things that section prohibits an insurer from doing is restricting or preventing the institution of legal proceedings. Thus, that section's prohibitions operate *before and after* suit is filed. Since that section prohibits an insurer from requiring *anything* other than establishing legal liability, St. Paul's requirement of a physical examination here is void.

St. Paul argues that even if it cannot require Fox to submit to an examination under the uninsured motorist provisions of the policy, it can still require an examination under the medical payments coverage since there is no statutory prohibition to such a requirement in the sections of the Code dealing with medical payments. I find, however, that such a requirement, under the facts of this case, is also prohibited. Specifically, the requirement imposed by the policy is that the insured submit to examinations "as often as the company may *reasonably* require." (Emphasis added.) I find as a matter of law that where an insured has made a claim under the medical payments provisions of a policy as well as the uninsured motorist provisions of the policy, and in light of the prohibition stated in Va. Code § 38.2–2206(H) and the adversary relationship described in *Maxey v. John Doe and GEICO, supra, any* request by the insurance company outside the judicial arena for a medical examination of the insured is unreasonable.

Finally, St. Paul argues that the validity of its examination requirement is buttressed by the fact that the Virginia Bureau of Insurance has approved the language. This court, however, is required to apply the law as set down by the General Assembly, not as interpreted by the Bureau of Insurance. The law here is clear and unambiguous and does not allow the interpretation sought by St. Paul.